**Herman RESNICK, Individually, as Co-Trustee of the F. Resnick Inc. Retirement Plan and Trust and the F. Resnick Inc. Employees' Pension Plan and Trust, and as a Shareholder of F. Resnick on behalf of himself and all other Shareholders of such Corporation, Plaintiff,**

v.

**Irving RESNICK, Individually and as Co-Trustee of the F. Resnick Inc. Retirement Plan and Trust and the F. Resnick Inc. Employees' Pension Plan and Trust, as Director of F. Resnick Inc. on behalf of himself and all other Shareholders of F. Resnick Inc. similarly situated and on behalf of and in the right of F. Resnick Inc., The F. Resnick Inc. Retirement Plan and Trust and The F. Resnick Inc. Employees' Pension Plan and Trust, Defendants and Third–Party Plaintiffs,**

**Arnold Resnick, A. Resnick Textile Co., Inc. and F. Resnick Inc., Additional Defendants,**

**Steven Resnick, Max Landa, Resnick & Landa, Inc., F. Resnick Inc. and Manufacturers Hanover Trust Company, Additional Defendants on the Counterclaim.**

No. 85 Civ. 9026 (RJW).

United States District Court, S.D.New York.

May 15, 1991.

Field, Lomenzo, Turret & Blumberg, P.C., New York, City (Ira A. Turret, of counsel), for plaintiff.

Julia Barash, New York City, for defendant Irving Resnick.

Edward R. Epstein, New York, City for additional defendants on the counterclaims.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Herman Resnick ("Herman") has moved to strike the jury demand contained in the Corrected Answer to the First Amended Complaint filed by defendant Irving Resnick ("Irving"). For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The facts giving rise to this most recent episode in the longstanding and bitter quarrel between the Resnick brothers have been fully documented in prior decisions of this Court, and need not be repeated here at length.[1]

### A. *Factual Background*

Herman and Irving jointly owned and operated their family business, F. Resnick Inc. ("F. Resnick"), beginning in or about 1955. F. Resnick operated as an importer and distributor of fabrics to clothing manufacturers in the United States and since the 1970's imported fabrics primarily from Prato, Italy. Each brother with his wife owned half of the shares of the company. Irving and Herman were also co-trustees of the F. Resnick, Inc. Employees Pension Plan and Trust (the "Pension Plan"), a defined benefit plan and a qualified employee pension plan under section 401 of the Internal Revenue Code, 26 U.S.C. § 401 *et seq.*, and the F. Resnick Inc. Retirement Plan and Trust (the "Retirement Plan"), a defined contribution plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (the Retirement Plan and the Pension Plan are collectively referred to as the "Plans"). For many years Standard Security Life Insurance Company of New York ("SSI") was engaged to perform all actuarial and administrative services for the Pension Plan.

In the spring of 1982, a dispute erupted between the brothers concerning the management and ownership of F. Resnick. Herman and Irving attempted to resolve their conflict through an agreement whereby one of the brothers would sell his shares in F. Resnick to the other. Unfortunately, the settlement efforts ultimately failed, and in or about August, 1982, Irving filed the first of a series of lawsuits between the brothers that have continued almost uninterrupted to this day.[2] An inordinate

---

1. Earlier decisions in this case include the Court's Memorandum Decisions, dated May 18, 1988 and October 24, 1990, 1990 WL 164968 and the Opinion of this Court dated September 14, 1989. 722 F.Supp. 27.

2. Irving filed the initial lawsuit in the Supreme Court, New York County, in or about August, 1982, seeking specific performance of the agreement, which he claimed required Herman to sell his shares of the company to Irving. Irving brought a second action in or around February, 1984, which he also filed in the New York Supreme Court, seeking judicial dissolution of

F. Resnick. While these two actions were pending, the parties settled their disputes by corporate resolution, as described, *infra,* and the state court actions were discontinued by stipulation.

After Herman initiated the instant lawsuit, Irving and his wife began another state court action on or about February 16, 1988, on their own behalf and on behalf of the shareholders of F. Resnick in the Supreme Court, New York County, naming MHT, Herman, Resnick & Landa and others as defendants. By Order dated October 14, 1988, the state court stayed that

amount of judicial resources in both the federal and state courts have thus far been expended in resolving the brothers' petty sibling rivalries.

On or about March 20, 1984, the parties adopted a series of corporate resolutions settling the first lawsuit (the "Resolutions"), and providing for the immediate dissolution of F. Resnick, the termination of the Plans, the distribution of their assets to the participants and the retention of CMS Pension Service ("CMS") to terminate the Plans. CMS calculated Irving's entitlement from the Pension Plan as a lump sum payment of $1,009,332, which was $27,739 less than had been calculated earlier as his lump sum entitlement by SSI. Herman contends that he prepared a letter authorizing payment of the vested benefits under the Plans as calculated by CMS. He also claims that when he asked Irving, as co-trustee of the Plans, to sign the letter, Irving refused and threatened him with arrest. Herman subsequently commenced this lawsuit.

B. *Procedural History*

The instant action was begun on November 15, 1985, by Herman, individually and as co-trustee of the Plans, seeking to recover his vested accrued benefits under the Plans. Herman alleged that Irving breached his fiduciary duty as a trustee under ERISA for failing to authorize payment of Herman's benefits. Herman asked that his benefits be paid, that Irving be removed as co-trustee of the Plans and that Herman be awarded his costs of bringing the action and punitive damages of $1,000,000.

In his answer, Irving asserted counterclaims against Herman, alleging that Herman had embarked on a course of action that would destroy F. Resnick by forming a business that competed directly with F. Resnick. Irving claimed that Herman spent over 80% of his time at the new company, had transferred half of F. Resnick's inventory to the new company and solicited business away from F. Resnick for the benefit of that company. Irving contended further that Herman impaired the

ability of F. Resnick to function by withdrawing his personal guarantee of F. Resnick's indebtedness as security for credit extended by Manufacturers Hanover Trust Company ("MHT"), the bank where F. Resnick maintained its corporate account. Irving charged that Herman conspired with his son, Steven Resnick ("Steven") and Max Landa ("Landa"), an employee of F. Resnick, to defraud F. Resnick by diverting the assets, customers and good will of F. Resnick. As a result of this conspiracy and Herman's breach of his fiduciary duty to F. Resnick, Irving sought damages as well as the return of Herman's salary and benefits and the salaries and benefits of Herman's co-conspirators to F. Resnick. Irving also sought damages from Herman in the amount of $27,739, representing the difference between the amount of his vested pension benefits as calculated by SSI and the amount he actually received.

This Court's Memorandum Decision dated May 18, 1988 granted partial summary judgment to Herman and ordered Irving to pay Herman the full amounts of his benefits due under the Plans, except for those benefits that accrued during the year the Plans were terminated.

On February 10, 1989, Irving filed a First Amended Answer, Counterclaims and Cross–Claims which added MHT as a defendant on the counterclaims, alleging that MHT participated in the conspiracy to destroy F. Resnick. Herman then filed a First Amended Complaint, which made new claims against Irving, and added Arnold and A. Resnick as defendants. The First Amended Complaint included allegations, in a "mirror image" of Irving's conspiracy claim against Herman, that Irving had conspired with his son Arnold Resnick ("Arnold") to dismantle F. Resnick and transfer its customers, suppliers and other resources to A. Resnick, a competing business which Irving and Arnold caused to be formed. Herman also alleged that Irving breached his fiduciary duties to F. Resnick by forming A. Resnick. The First Amended Complaint also contained claims against Irving for breach of contract, alleging that

action pending a decision on similar claims raised in this lawsuit.

Irving violated the agreement contained in the Resolutions by *inter alia*, instituting further lawsuits against Herman and receiving $23,625 from F. Resnick that Irving claimed was wrongfully contributed to the Pension Plan.

On April 3, 1989, Irving filed his Answer to the First Amended Complaint, again asserting claims against MHT and the other third-party defendants.[3] Irving sought disgorgement of the profits of Resnick & Landa, Inc. ("Resnick & Landa"), the company Herman allegedly formed as part of the conspiracy to destroy F. Resnick, as well as damages in the amount of $10,000,000 from all of the alleged co-conspirators. Irving's answer included a claim for intentional infliction of emotional distress against all of the co-conspirators. Irving's answer also alleged that Herman had fraudulently induced Irving to enter into the agreement contained in the Resolutions, and sought to rescind that agreement. The answer also contained several ERISA claims, in which Irving claimed that Herman breached his fiduciary duty as co-trustee of the Plans by failing to authorize payment to Irving of the remaining $27,739 to which he claims he is entitled. As a result of this breach, Irving sought to have Herman removed as trustee and requested payment of benefits and punitive damages.

In its Opinion dated September 14, 1989, the Court granted partial summary judgment to Irving on his thirteenth counterclaim, and ordered that certain adjustments be made as between the amounts held in the Retirement Plan and the Pension Plan. The Court also granted MHT summary judgment on three of the counterclaims brought against it by Irving. The remaining claims against MHT were dismissed in the Court's Memorandum Decision dated October 24, 1990. That decision also dis-

missed Herman's claim against Arnold and A. Resnick.

Despite the many pre-trial motions that have been filed in this case, numerous issues have resisted summary disposition and will now be decided at trial. Herman's First Amended Complaint and Irving's Answer to the First Amended Complaint both contained jury demands. Herman now seeks to strike Irving's jury demand, and requests that his own demand be withdrawn to the extent the Court grants his motion. Irving opposes Herman's motion, arguing that he is entitled to a jury trial on his claims.

### DISCUSSION

The rules governing demands for a jury trial are contained in Rule 38, Fed.R.Civ.P. That Rule provides in part:

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

. . . . .

(c) Same; Specification of Issues. In the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable ...

(d) ... A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

■ Both Herman and Irving made jury demands in accordance with the provisions of Rule 38. Since neither specified in his jury demand which issues he wished to have tried by jury, each is deemed to have demanded a jury trial for all those issues as to which a right to a jury trial is conferred by the Seventh Amendment or by federal statute. *Rosen v. Dick*, 639 F.2d 82, 90–91 (2d Cir.1980).[4]

---

3. By Stipulation, filed May 22, 1989, Irving's Answer to the First Amended Complaint was amended to insert specific allegations that many of Irving's counterclaims were also brought as shareholder derivative claims on behalf of F. Resnick.

4. Irving has opposed Herman's request for permission to withdraw his jury demand, pointing

out that Rule 38 requires consent of the parties before a jury demand may effectively be withdrawn. The consent requirement contained in Rule 38 ensures that one party may rely on another's jury demand. *Rosen v. Dick, supra,* 639 F.2d at 91. However, this principle extends only to those issues where that reliance is reasonable, that is, where the party making the

## A. The ERISA Claims

In this action, Herman and Irving have each brought several ERISA claims against the other. Although both of the brothers describe their claims as being for breach of fiduciary duty, a majority of the issues to be decided at trial concern their entitlement to certain benefits under the provisions of the Plans. *See* Pretrial Order, filed February 15, 1991, at Trial Issues, p. 1. The other claims concern whether Herman or Irving should be removed as trustees of the Pension Plan and whether either of the brothers should be assessed punitive damages or attorneys' fees. Herman argues that all ERISA claims are inherently equitable in nature and that Irving's jury demand should be stricken as regards all the ERISA issues in this case.

ERISA is silent as to whether the statute confers a right to a jury trial for claims brought pursuant to its provisions, and courts have struggled with the question of whether and under what circumstances such a right may exist. *See, e.g., Brock v. Group Legal Administrators, Inc.,* 702 F.Supp. 475, 476 (S.D.N.Y.1989) ("[A] claim pursuant to ERISA does not give rise to the right to a jury trial"); *Paladino v. Taxicab Industry Pension Fund,* 588 F.Supp. 37, 39 (S.D.N.Y.1984) ("[P]rivate civil litigation seeking to enforce rights under ERISA should be tried to a jury").

The Second Circuit has made clear that ERISA claimants seeking traditionally equitable remedies such as restitution and removal of a pension fund trustee are not entitled to a jury trial. *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.), *cert. denied sub nom., Cody v. Donovan,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). The *Kat-*saros decision does not, however, support the view that all ERISA claims should be treated as equitable, since the Court in *Katsaros* specifically distinguished the equitable relief sought in that case from cases seeking "damages for wrongdoing or non-payment of benefits." *Id.* That decision is more correctly viewed as endorsing an approach in which the right to a jury trial of an ERISA claim depends upon the type of relief sought. *Abbarno v. Carborundum Co.,* 682 F.Supp. 179, 181 (W.D.N.Y.1988); *but see Nobile v. Pension Committee of Pension Plan for Employees of New Rochelle Hospital,* 611 F.Supp. 725, 728 (S.D.N.Y.1985).

The Court of Appeals has yet to decide whether a right to a jury trial exists for claimants seeking benefits under a pension plan subject to ERISA.[5] An examination of this type of claim leads the Court to conclude that such a claim may properly be decided by a jury. An action challenging a denial of benefits closely resembles a contract dispute. In such an action, a plaintiff is seeking damages for non-payment of benefits, a claim that is essentially legal in nature. A court determines a plaintiff's entitlement to benefits by applying principles of contract law to construe the terms of the plan rather than by looking to equitable principles. *Abbarno v. Carborundum Co., supra,* 682 F.Supp. at 181; *Paladino v. Taxicab Industry Pension Fund, supra,* 588 F.Supp. at 39.

The Supreme Court's recent decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–15, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989), provides further support for the view that a plan enforcement action should be viewed as a legal rather than an

demand is legally entitled to demand a jury trial. *Id.* at 92.

In any event, regardless of whether Herman may now withdraw his jury demand, Irving's own jury demand entitles him to a jury determination of all issues which are covered by the Seventh Amendment or federal statute. Although both parties appear to assume that each of their jury demands applies only to the claims being advanced by that party, unless otherwise limited, a jury demand applies to all issues in a lawsuit pertinent to the party making the demand. *Id.* at 91.

5. The Second Circuit implied that a right to a jury trial may exist in such cases, when, in an ERISA case involving a challenge to a denial of benefits, the Court upheld the granting of a directed verdict but expressed "reservation about the practice of taking a case away from a jury, rather than setting aside an incorrect verdict, if necessary." *Haeberle v. Board of Trustees of Buffalo Carpenters Health–Care, Dental, Pension and Supplemental Funds,* 624 F.2d 1132, 1136 (2d Cir.1980).

equitable claim. In ruling that a *de novo* standard of review should normally be applied to a trustee's denial of benefits in an ERISA action, the Court stated that employees bringing claims under ERISA are entitled to at least the same protections as existed prior to its passage, when "[a]ctions challenging an employer's denial of benefits ... were governed by principles of contract law." *Id.* at 112, 109 S.Ct. at 955. *See also Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 891 (S.D.N.Y. 1990) (citing *Firestone Tire & Rubber Co. v. Bruch, supra*, as supporting right to jury trial in disputes over terms of ERISA plans).

■ In light of the foregoing discussion, the Court is of the view that the brothers' claims for benefits under the Plans are legal claims and that factual issues regarding those claims are properly determined by a jury. Accordingly, the Court declines to strike Irving's jury demand as regards the benefit claims and the claims for punitive damages. The claims in which each brother requests removal of the other as trustee of the Plans seek relief which is, by contrast, essentially equitable in nature. *Katsaros v. Cody, supra*, 744 F.2d at 278. The motion to strike is therefore granted as regards these claims.

## B. *The Pendent State Claims*

In addition to the ERISA claims, the brothers have each brought a number of pendent state law claims against each other. The parties are in agreement that the state law claims advanced in this case seek both legal and equitable relief. Herman argues that Irving's jury trial demand should be stricken as regards these claims, since, he argues, New York state law provides that a party waives his right to a jury trial when he joins equitable and legal claims in the same action. Irving responds that under federal law he is entitled to a jury determination of all factual issues relating to the legal claims in this case.

■ Federal courts apply state substantive law to pendent state claims. *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir.1983), *cert. denied sub nom. Global Terminal & Container Services, Inc. v. Colgate Palmolive Co.*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Federal procedural rules apply, however, where they cover the point in dispute and no conflicting state rule "would substantially affect primary decisions respecting human conduct." *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir.), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990) (quoting *Hanna v. Plumer*, 380 U.S. 460, 475, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8 (1965)). A rule governing the right to a jury determination of factual issues in cases joining equitable and legal claims is clearly intended only to regulate the internal mechanics of a litigation and will not affect primary decisions respecting human conduct. *Rand v. Underwriters at Lloyd's, London*, 295 F.2d 342, 346 (2d Cir.1961), *cert. denied*, 368 U.S. 988, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962). Indeed, it is difficult to imagine how such a rule could influence human conduct at all. The Court will therefore apply federal rules regarding the right to a jury trial to the pendent state claims in this case.

■ Although New York state courts have held that a party waives his right to a jury trial when he joins equitable and legal causes of action, *Zimmer–Masiello, Inc. v. Zimmer, Inc.*, 164 A.D.2d 845, 559 N.Y. S.2d 888, 889 (1990); *Kaplan v. Long Island University*, 116 A.D.2d 508, 497 N.Y. S.2d 378, 379 (1986), when a federal court is presented with a case involving both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the party making the demand has a right to have the legal claims tried to a jury. *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir.1988); *Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545, ——, 110 S.Ct. 1331, 1335–37, 108 L.Ed.2d 504 (1990); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 471–72, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–

11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959). In order to ensure that this right is preserved, the legal claims are normally tried to the jury before the court hears the equitable claims. *Wade v. Orange County Sheriff's Office, supra,* 844 F.2d at 954; *Dairy Queen, Inc. v. Wood, supra,* 369 U.S. at 479, 82 S.Ct. at 900.

### 1. The Claims for Breach of Fiduciary Duty and Conspiracy

■ Each brother has brought breach of fiduciary duty claims against the other on behalf of himself, and derivatively on behalf of F. Resnick.[6] Both of these claims accuse the other brother of forming a corporation in direct competition with F. Resnick. In addition to the breach of fiduciary duty claim, Irving also alleges a conspiracy between Herman, Steven and Landa to defraud F. Resnick by forming Resnick & Landa and diverting F. Resnick's assets, customers and suppliers to Resnick & Landa. (These claims will be referred to collectively as the "Competing Corporation Claims.") Both brothers seek a monetary award as their remedy for these claims. Herman characterizes this award as damages, while Irving characterizes the relief he seeks as disgorgement of profits of Resnick & Landa, and damages, including the salaries and benefits paid to Herman, Steven and Landa during the period of the alleged conspiracy and Herman's share in the profits of F. Resnick during that period. Irving also seeks punitive damages from Herman, Steven and Landa.

The parties' designation of most of the Competing Corporation Claims as claims for breach of fiduciary duty is insufficient to determine whether the right to a jury trial exists for these claims. In another context, the Second Circuit has stated that "[a]lthough fiduciary relationships have equitable underpinnings," a court should look to the nature of the relief sought to determine whether an action that is framed as a claim for breach of fiduciary duty is legal or equitable in nature. *Spector v. Mermel-*

*stein,* 485 F.2d 474, 482 n. 8 (2d Cir.1973) (awarding prejudgment interest); *see also Lewis v. S.L. & E. Inc., supra,* 831 F.2d at 39 (citing *Spector v. Mermelstein, supra,* 485 F.2d at 482 n. 8). Similarly, since fraud is neither a legal nor an equitable issue in itself, the Court must also look to the relief requested in determining the whether Irving's claims for conspiracy to defraud F. Resnick should be tried to a jury. 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice,* ¶ 38.20 (2d ed. 1991).

■ The fact that both brothers seek monetary awards as their sole remedy for the Competing Corporation Claims is not dispositive of whether a right to a jury trial exists with regard to these claims. When monetary claims are made in the form and in the situations which were historically allowed in equity, there is no right to have these claims tried to a jury. *Schuyt v. Rowe Price Prime Reserve Fund, Inc.,* 835 F.2d 45, 46 (2d Cir.1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1594, 99 L.Ed.2d 908 (1988) (citing *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 95 (2d Cir.1978) (Friendly, J.)). Accordingly, the Court must examine the claims in somewhat greater detail to decide whether the relief they seek is better described as legal or equitable.

Irving's request for disgorgement of Resnick & Landa's profits seeks relief that has traditionally been held to be equitable. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990); *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987). Moreover, although Irving describes the return of the salaries and benefits of the alleged co-conspirators as damages, this relief is in the nature of restitution, an equitable remedy. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, supra,* 110 S.Ct. at 1348; *Tull v. United States, supra,* 481 U.S. at 424, 107 S.Ct. at

---

6. The analysis used to determine whether a claim is legal or equitable is the same, whether the claim is brought derivatively on behalf of a corporation or directly by the shareholder.

*Ross v. Bernhard,* 396 U.S. 531, 532–33, 90 S.Ct. 733, 734–35, 24 L.Ed.2d 729 (1970); *Lewis v. S.L. & E. Inc.,* 831 F.2d 37, 39 (2d Cir.1987).

1839. Similarly, Irving's claim for Herman's share of the profits of F. Resnick is more properly characterized as restitution than legal damages. By contrast, both brothers' claims for damages to compensate for the appropriation of F. Resnick's corporate opportunities and the diversion of its corporate assets are more in the nature of a legal action. *See Lewis v. S.L. & E. Inc.*, 629 F.2d 764, 769 (2d Cir.1980). Accordingly, Herman's motion to strike the jury trial demand is granted as to the claims for disgorgement of profits and restitution but denied as to the claims for compensatory and punitive damages.

## 2. The Remaining State Claims

 The remaining state law claims —Irving's claim against Herman, Steven and Landa for intentional infliction of emotional distress; Herman's breach of contract claim against Irving; and Irving's claim for recission of the agreement in the Resolutions—require little discussion. Irving's claim for intentional infliction of emotional distress is a traditional tort for which Irving seeks legal damages, and is properly decided by a jury. As regards the claims relating to the Resolutions, Herman's claim is for specific performance of the agreement embodied in the Resolutions, while Irving seeks their recission. Both of these claims seek purely equitable remedies for which there is no right to a trial by jury.

## CONCLUSION

For the foregoing reasons, Herman's motion to strike Irving's jury demand and to withdraw his own jury demand is granted as to those portions of both brothers' ERISA claims that seek removal of the co-trustees; Irving's claims for disgorgement of profits of Resnick & Landa and restitution of the salaries and benefits of Herman, Steven and Landa as well as Herman's share of F. Resnick's profits for the period of the alleged conspiracy; Herman's claim for specific performance of the agreement contained in the Resolutions; and Irving's claim for recission of that agreement. Plaintiff's motion is in all other respects denied. The parties are directed to advise the Court by May 29, 1991 concerning their availability for an early trial.

It is so ordered.