**Douglas McDONALD, et al., Plaintiffs,**

**v.**

**ARTCRAFT ELECTRIC SUPPLY COMPANY, a/k/a Consolidated Electric Supply, et al., Defendants.**

**Civ. A. No. 90–3051.**

United States District Court, District of Columbia.

Oct. 9, 1991.

Lynn Miller, James R. Klimaski, Thomas A. Beckett, Klimaski, Miller & Smith, Washington, D.C., for plaintiffs.

Gil A. Abramson, Hogan & Hartson, Baltimore, Md., for defendants.

**30**

## MEMORANDUM OPINION

FLANNERY, District Judge.

### I. Introduction

In March of 1989, Defendant Artcraft Electrical Supply ("Artcraft") hired Plaintiff Douglas McDonald ("McDonald") as a sales representative. One year later, in March of 1990, Artcraft terminated McDonald's employment. Plaintiffs allege, and Defendants do not dispute, that while McDonald was employed by Artcraft, his compensation included enrollment in the Consolidated Electric Supply Employee Group Medical Plan ("the Plan"). The Plan, which is self-insured, is funded, operated and administered by Defendant Wilcox and Gibbs. All Parties agree that the Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

In October of 1989, Mr. McDonald was diagnosed as having esophageal cancer.[1] He underwent surgery in November of 1989 and returned to work in February of 1990. A month later, Mr. McDonald was required to spend an additional week in the hospital for treatment of post-surgical complications. On March 12, 1990, the day he returned to work following his second hospitalization, Artcraft informed Mr. McDonald that his employment had been terminated as of March 9, 1991.

Mr. McDonald filed this action against his employer and its parent corporations on December 17, 1990. He alleged that he was fired because Artcraft did not want to continue to pay for his medical expenses. He further alleged that Artcraft failed to provide him with timely, complete or accurate information regarding the status of his continuing medical and life insurance coverage. Additionally, Mr. McDonald claimed that Artcraft failed to pay him all of his accrued compensation.

In this suit, based both on diversity and federal question jurisdiction, McDonald raises numerous state law claims [2] in addition to alleging that Artcraft violated ERISA.[3] Defendants have moved for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Pursuant to that Rule, the Court, for the purposes of this motion, will view the facts in the light most favorable to Defendants.

### II. Preemption

■ Defendants argue that they are entitled to summary judgment on each of the state law claims on the grounds that they are preempted by the federal ERISA statute. With the exception of Mr. McDonald's claim for wages due and owing, the Court agrees with Defendants for the reasons set forth below.

The preemption clause of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has repeatedly ruled that Congress intended for this clause to be read expansively. "The breadth of [ERISA]'s pre-emptive reach is apparent from that section's language. A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.... Congress used the words 'relates to'... in their broad sense." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103

---

1. Mr. McDonald succumbed to his illness in September of 1991. Accordingly, his estate has been substituted in this action.

2. Specifically, Plaintiff Douglas McDonald asserts claims based on the following: the District of Columbia Human Rights Act, 1 D.C.Code §§ 1–2501 to 1–2557; breach of contract; intentional infliction of emotional distress; wrongful discharge; misrepresentation; and recovery of overpayment. Additionally, Ms. Delores McDonald, Mr. McDonald's wife and financial dependant, claims damages for intentional infliction of emotional distress.

3. Specifically, Mr. McDonald alleges that Defendants interfered with his rights to payment under the Plan in violation of 29 U.S.C. § 1140; that Defendants failed to provide Plaintiffs proper notice concerning their rights to continuous and uninterrupted health care and life insurance coverage in violation of 29 U.S.C. §§ 1161–1166; and that Defendants failed to pay benefits due to Mr. McDonald, thereby entitling him to relief pursuant to 29 U.S.C. § 1132(a)(1)(B).

S.Ct. 2890, 2899–900, 77 L.Ed.2d 490 (1983) (footnotes omitted).

"The pre-emption clause is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. [——, ——], 111 S.Ct. 403, 407 [112 L.Ed.2d 356] (1990). Its "deliberately expansive" language was designed to "establish pension plan regulation as an exclusively federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 [107 S.Ct. 1549, 1552, 95 L.Ed.2d 39] (1987) (*quoting Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

Not only has "relates to" been read broadly, but "State law" has a comprehensive statutory definition. "[T]o underscore its intent that [ERISA's preemption clause] be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-empted. Such laws include 'all laws, decisions, rules, regulations, or other State action having the effect of law.' 29 U.S.C. § 1144(c)(1)." *Id.*, 111 S.Ct at 483.[4]

The facts in *Ingersoll–Rand* are similar to those in this case. Ingersoll–Rand fired Perry McClendon who had worked as a salesperson for the company for over nine years. McClendon brought a state law wrongful discharge claim based in contract and tort law, claiming that the reason for his termination was the company's desire to avoid making contributions to his pension fund.

The Court ruled that ERISA's remedies are exclusive. While the state law did not purport to regulate employee benefit plans and conditions, the state law claims were related to an ERISA plan and were, therefore, preempted by ERISA.

The purpose of ERISA's preemption clause is to ensure uniformity of employee benefits law. The Court held that allowing a state claim based on an employee benefit-evading motive would undermine that congressional purpose.

Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose.... Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct.... Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.

*Id.* at 484. In fact, ERISA explicitly "protects plan participants from termination motivated by an employer's desire" to avoid paying benefits. *Id.* at 485.

Nor is *Ingersoll–Rand* the only case in which the Court has found state claims preempted by ERISA. The Court has consistently reached this result. In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the plaintiff employee had taken a two-month leave of absence due to emotional problems. His employer refused to pay his medical expenses for the period during which he was absent and ultimately fired him when, in protest, he did not return to work. The employee then brought suit for breach of contract, emotional distress, recovery of money owed, wrongful termination and wrongful failure to promote the employee. The Supreme Court held that the employee's state contract and tort claims were preempted by ERISA. *Id.* at 62–63, 107 S.Ct. at 1545–46. *See also, Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (claims of "tortious breach of contract," "breach of fiduciary duty," and "fraud in the inducement" to join employee medical benefits plan were preempted by ERISA because they related to employer's administration of employee benefit plan.); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (ERISA preempted New York Human Rights Law, which was broader in scope than federal anti-discrimination law, where claim was based on fail-

---

**4.** ERISA's definition of "State" includes the District of Columbia. 29 U.S.C. § 1002(10).

ure to provide medical benefits to pregnant employees.)

Plaintiffs attempt to distinguish this line of cases, first, by arguing that the state claims were preempted in those cases because they were brought in lieu of an ERISA action whereas in the present case, Plaintiffs have brought their state claims in addition to ERISA claims. Plaintiffs, however, have not pointed to language in any of the Supreme Court cases cited above which would indicate that the state law claims could somehow be resurrected by simply joining them to an ERISA claim based on the same employer conduct underlying the state claims. Nor is such a result desirable. The Supreme Court has held that ERISA's legislative history makes clear that Congress was concerned with uniformity in the laws governing employer conduct related to employee benefits. This goal cannot be achieved if an employer is bound not only by ERISA, but also by the substantive law of each state. Rather, the lesson of the Supreme Court cases is that when a claim relates to an ERISA–governed plan, the plaintiff's sole avenue of relief is to bring an ERISA action.

Secondly, Plaintiffs urge the Court to look to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the law on which the ERISA preemption clause was modeled. Based on LMRA case law, Plaintiffs conclude that the preemption issue should turn on whether resolution of the state law issue necessitates reference to the Plan document. The problem with Plaintiffs' argument is that the Supreme Court was conscious of the LMRA case law when it determined the breadth of ERISA preemption. In fact, the Court specifically cited the LMRA in ruling that ERISA's preemptive force is broad enough to reach not only claims based directly on plan documents, but any claim even indirectly related to the administration of an ERISA plan.

"The conclusion that [ERISA's civil enforcement section] was intended to be ex-clusive is supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the preemptive force of [29 U.S.C. § 1132(a)] was modeled on the exclusive remedy provided by § 301 of the [LMRA]." *Pilot Life, supra,* 481 U.S. at 52, 107 S.Ct. at 1555. The Court went on to hold that the analogy to LMRA did not lead to the conclusion, as Plaintiffs argue, that only controversies over the plan documents are preempted. In fact, the LMRA analogy led the Court to rule that all related state law claims are preempted by ERISA: "The expectations that a federal common law of rights and obligations under ERISA–regulated plans would develop, indeed the entire comparison of ERISA's [§ 1132(a)] to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under [§ 1132(a)] could be *supplemented* or supplanted by varying state laws." *Id.* at 56, 107 S.Ct. at 1558 (emphasis added). A state law is preempted if it relates to an employee benefit plan, whether or not that was the intent of the state law and even if the effect is only indirect. *Ingersoll–Rand, supra,* 111 S.Ct. at 483; *see also id.* at 486 ("it is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits.").

The ERISA preemption is broad in order to provide statutory uniformity. Thus, ERISA's preemption clause reaches claims indirectly related to ERISA plans as well as those directly related. It reaches related state law claims brought in addition to ERISA claims as well as state law claims brought instead of ERISA claims. Finally, an examination of the LMRA reinforces this conclusion rather than undermines it.

Based on the foregoing analysis, the Court concludes that the state law claims in the present action are preempted by ERISA. Plaintiffs' state law claims, with one exception,[5] relate to (in fact, directly

---

**5.** Mr. McDonald does make one breach of contract claim—designated IV F "Wages Due and Owing" in Plaintiffs' Amended Complaint dated January 9, 1991—which does not appear to re-late to the ERISA claims. This claim relates not to Plan benefits owed, but to compensation owed. McDonald claims that Defendants did not compensate him for all of the time that he

relate to) the ERISA claims. The state law claims are based on Mr. McDonald's termination which was allegedly motivated by a desire to avoid obligations under an ERISA plan. ERISA explicitly governs such conduct, and thereby preempts such state law claims. Accordingly, as to these law claims, the motion for summary judgment is granted.

III. Plaintiffs' Demand for a Jury Trial

■■■ Defendants have moved this Court to enter an order to strike Plaintiffs' demand for a jury trial. This raises the currently unsettled issue of whether there is a right to a jury trial in an ERISA action. Plaintiffs argue that they have such a right both as a statutory matter under ERISA and as a constitutional matter under the Seventh Amendment. For the reasons set forth below, the Court agrees with Plaintiffs and, therefore, grants their motion.

The statutory language under ERISA is silent on the subject of a jury trial. Where congressional intent on the subject of a jury trial is not clear from the statutory language, a court must look to the pre-statutory custom with respect to such actions. *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir.1980). "[I]n determining the scope of an implied statutory right to a jury trial, it is essential to consider interests broader than those protected by the Constitution–including whether 'the crux of the case [is] a factual determination' of the sort traditionally made by common law juries." *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 886 (S.D.N.Y.1990) (citation omitted). Likewise, in analyzing congressional intent, a court must look at the type of relief granted; if the relief is arguably legal in nature, and therefore, a jury trial is arguably constitutionally-compelled, it is more likely that Congress intended that the statute provide for a jury trial.

Defendants cite numerous circuit court opinions [6] denying jury trials in ERISA actions. These cases must be examined both to compare the type of claims brought in this action with those in the cases cited by Defendants and to revisit those decisions in light of recent Supreme Court jurisprudence.

The cases Defendants rely on are suits by plan participants against the plan claiming that the plan has been incorrectly administered. The common law analogue to such claims, several courts have held, are actions for breach of a trustee's fiduciary duty, a traditional equitable basis for relief. "[Under the common law of trusts proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury." *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir.1985); *accord Calamia v. Spivey, supra* at 1237; *see also, In re Vorpahl*, 695 F.2d 318, 321 (8th Cir.1982) ("'suits under the law of trusts ... have been considered equitable in character.'" (*quoting Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981))).

Defendants read these cases as establishing a bright line rule that juries are never available in ERISA cases since ERISA is grounded in the law of equity. These cases do not, however, set forth such a rule. In *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), another case on which Defendants rely in arguing for a bright line rule, the Second Circuit examined the line of cases cited by Defendants and concluded "[t]here is no right to a jury trial of ERISA actions

---

was employed by them. Regardless of the motivation for his termination, McDonald argues that he was not fully compensated for work performed up until the time of his termination. Since this dispute relates solely to compensation, not to ERISA benefits, it is not preempted by ERISA; accordingly as to this claim, the motion for summary judgment is denied.

**6.** Defendants cite no authority from this Circuit addressing the right to a jury trial in an ERISA action. Since the question appears to be undecided in D.C. Circuit, this Court relies on the significant and growing body of precedent in other jurisdictions for guidance in resolving this difficult and important question.

against pension fund trustees seeking the equitable remedy of restitution." The *Katsaros* Court was very careful to distinguish, however, an ERISA action like the one before it where equitable relief was sought and an ERISA suit seeking monetary damages: "Nor were appellants entitled to a jury trial of the claims against them since the plaintiffs seek equitable relief in the form of removal and restitution as distinguished from damages for wrongdoing or non-payment of benefits." *Id.*

This statement indicates that the Second Circuit read the case law to preclude a right to a jury trial only when traditionally equitable claims were at issue. "*Katsaros* would not preclude a jury trial where a plaintiff is seeking relief other than that which is considered equitable in nature." *Weber v. Jacobs Mfg. Co.*, 751 F.Supp. 21, 24 (D.Conn.1990). *See also, Resnick v. Resnick*, 763 F.Supp. 760, 765 (S.D.N.Y.1991) ("*Katsaros* ... does not ... support the view that all ERISA claims should be treated as equitable ... That decision is more correctly viewed as endorsing an approach in which the right to a jury trial of an ERISA claim depends upon the type of relief sought."); and *Abbarno v. Carborundum Co.*, 682 F.Supp. 179, 181 (W.D.N.Y.1988) ("*Katsaros* ... establish[ed] a rule that ERISA actions can be tried to a jury provided the particular ERISA claim at hand is legal in nature— *e.g.*, a claim for non-payment of benefits.").

Moreover, the cases that have found certain ERISA claims to be equitable in nature have relied on case law subsequently repudiated by the Supreme Court. Federal courts prior to *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), "routinely employed an 'arbitrary and capricious' standard to review actions taken by fiduciaries administering company benefit plans." *Berry v. Ciba–Geigy Corp.*, *supra* at 1006. This standard is associated with the equitable law of trusts and "is incompatible with a jury trial scheme." *Id.* at 1007. It was only after making this observation that the Fourth Circuit concluded that rights under employee benefit plans are equitable in nature and are not matters for a jury. *Id.; See also Calamia v. Spivey*, *supra* at 1237 ("the kind of determination required—whether the pension fund acted arbitrarily and capriciously—was one traditionally performed by judges.")

The Supreme Court in *Firestone* ruled that the federal courts that had applied the arbitrary and capricious standard of trust law to ERISA actions were applying an incorrect standard. "Actions challenging an employer's denial of benefits before enactment of ERISA were governed by principles of contract law." *Id.*, 109 S.Ct. at 955. Contract actions are reviewed *de novo*. Thus, by using an arbitrary and capricious standard, federal courts were "afford[ing] less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* at 956. This result is inimical to the intent of ERISA "to promote the interests of employees and their beneficiaries in employee benefits plans." *Id.* at 955. The Court went on to hold that a *de novo* standard of review was appropriate under ERISA.

*Firestone* marks a significant turning point in the interpretation of ERISA law. The Supreme Court views ERISA claims as analogous to contract actions prior to ERISA. Contract actions are legal in nature. Furthermore, they are generally fact-intensive disputes. In other words, they are quintessential jury issues. If a right to a jury existed prior to the passage of ERISA, then to hold that no such right exists under ERISA would "afford less protection" to employee rights than they had before the Act was passed—a result the Supreme Court squarely rejected in *Firestone*.

"[I]t was the intent of Congress that ERISA plan enforcement actions be regarded as legal in nature, and that litigants be entitled to a jury trial." *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 885 (S.D.N.Y.1990). In fact, the District Court in *Vicinanzo* commented that it is "[p]erhaps because the right to a jury trial on claims of legal entitlement is so obvious, [that] ERISA makes no *express* provision for jury trials even on fact-oriented issues arising in purely contractual cases." *Id.*

(emphasis in the original); *see also, Rhodes v. Piggly–Wiggly Alabama Distributing Co.,* 741 F.Supp. 1542, 1545–46 (N.D.Ala. 1990) (The fact that "Congress has always understood that the right to jury trial is supplied by the Seventh Amendment" may explain why Congress did not believe it necessary expressly to provide for a jury trial in the statute and why it has never purported to deny such a right.) Thus, while ERISA contains no explicit reference to jury trials, "ERISA impliedly conferred a jury trial right with respect to factual disputes arising in connection with contracts or trust instruments." *Vicinanzo, supra* at 886.

*Ingersoll–Rand, supra,* provides additional support for the conclusion that recent Supreme Court case law suggests a jury trial by right in certain ERISA actions. The plaintiff in *Ingersoll–Rand* sought compensatory and punitive damages under various tort and contract theories. *Id.* at 481. In ruling that ERISA preempted these state law claims (see discussion in Part II, above), the Court concluded:

> Not only is [29 U.S.C. § 1132(a)] the exclusive remedy for vindicating [29 U.S.C. § 1140]-protected rights, there is no basis in [§ 1132(a)]'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide.

*Id.* at 486.

If a court can, under ERISA, award traditional contract and tort remedies—including compensatory monetary relief—then the ERISA claim seeking such relief must be legal, not equitable. Thus, not only is *Ingersoll–Rand* powerful support for the proposition that Congress intended for ERISA to provide a statutory right to a jury in such cases, but that a jury trial is a constitutional imperative in such cases. "Although *Ingersoll–Rand* does not speak directly to the question of the Seventh Amendment's application to ERISA cases, the fact that *Ingersoll–Rand* now recognizes the possibility of a recovery of tort-like damages in ERISA cases leads inexora-

bly to the right to the trial by jury...." *Blue Cross and Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345, 347 (N.D.Ala. 1990).

"[T]he Seventh Amendment ... applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century...." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). When a statutory right is grounded on a traditional legal cause of action and traditional legal relief is available under the statute, the Seventh Amendment is implicated. In fact, "[t]aken together, the Supreme Court's recent cases suggest that statutory causes of action giving rise to individual claims for money damages are rarely, if ever, beyond the reach of the Seventh Amendment." *Vicinanzo, supra* at 890 (*citing Granfinanciera, supra* (finding right to jury trial under the Bankruptcy Code), *Teamsters Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (finding right to jury trial under § 301 of the LMRA), and *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) (intimating in footnote that there may be jury trial right under Title VII)).

Plaintiffs claim that Defendants violated 29 U.S.C. § 1140 of ERISA. "The closest common law analogues to a [§ 1140] action under ERISA is a wrongful termination or a breach of contract suit. Such actions are traditionally legal, not equitable in nature." *Weber v. Jacobs Mfg. Co.,* 751 F.Supp. 21, 25 (D.Conn.1990). As in *Weber,* a plaintiff in this case "seeks compensatory damages for lost back-pay and health benefits." *Id.* Not only are such claims legal, they "are void of equitable attributes." *Id.* "A court determines a plaintiff's entitlement to benefits by applying principles of contract law to construe the terms of the plan rather than by looking to equitable principles." *Resnick, supra* at 765; *see also, Gangitano v. NN Investors Life Ins. Co., Inc.,* 733 F.Supp. 342 (S.D.Fla.1990) (finding constitutional right to jury trial in ERISA action for recovery of benefits since claim was "nothing more than a breach of contract

claim," which historically would be "triable at law.").

Therefore, even if Congress had intended through ERISA to eliminate the right to a jury trial in contract actions involving employee benefits, it simply does not have the constitutional authority to do so. "[Congress] lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." *Granfinanciera, supra,* 109 S.Ct. at 2795.

Based on the recent Supreme Court case law and on numerous recent District Court opinions analyzing this precedent, this Court concludes that for certain ERISA claims there are both a statutory and a constitutional right to a jury trial. Where a claim exists which, had it been brought under state law prior to the passage of ERISA, would have entitled the parties to a trial by jury, that claim when brought under ERISA also entitles the parties to a trial by jury. ERISA, which was passed to protect employees and their beneficiaries, does not strip them of their right to trial by jury. That was not the intent of the statute, nor does this Court read the statute to produce that result. The conclusion that ERISA implies a right to a jury trial is even easier to reach where, as here, not only do Plaintiffs seek traditionally legal relief, but the dispute is fact-intensive, and therefore, particularly well-suited to resolution by a jury.

Even if ERISA did purport, however, to preclude a jury trial for traditionally legal causes of action, it could not do so; Plaintiffs have a constitutional right to trial by jury under the Seventh Amendment for the claims they have brought in this action. Accordingly, Defendants' motion to strike Plaintiffs' demand for a jury trial is denied.

IV. Defendants' Motion to Dismiss Plaintiffs' Request for Punitive Damages

Plaintiffs in this action have requested punitive damages. Defendants argue that punitive damages are not available under ERISA and therefore requests the Court to dismiss this request. The Court believes that Defendants' motion is premature. At the close of trial, if the Court deems based on the evidence elicited at trial that a jury instruction on punitive damages may be appropriate, the Court will at that time entertain Defendants' motion and consider the issue of whether punitive damages are available under ERISA.

Conclusion

For the reasons stated above, Defendants' motion for partial summary judgment is granted as to the claims made in Parts IV D, E, G, H, I and J of Plaintiffs' Amended Complaint of January 9, 1991 and Defendants' motion to strike Plaintiffs' demand for a jury trial is denied.

Ordered accordingly.