William SULLIVAN, et al., Plaintiffs,

v.

**LTV AEROSPACE AND DEFENSE COMPANY, et. al., Defendants.**

No. 91–CV–713S.

United States District Court, W.D. New York.

April 14, 1994.

Alan J. Bozer, Albrecht, Maguire, Heffern & Gregg, P.C., Buffalo, NY, for plaintiffs.

Earl K. Cantwell, II, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court is defendant's motion to strike plaintiffs' jury demand, pursuant to Fed.R.Civ.P. 12(f). Defendants argue that § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), does not expressly or impliedly provide for a jury trial to enforce the terms of an ERISA plan. Furthermore, defendants argue that plaintiffs' lawsuit seeks to enforce equitable rights and recover equitable remedies. Therefore, defendants argue, the Seventh Amendment to the United States Constitution does not provide plaintiffs the right to a jury trial.

In support of their motion, defendants have submitted a Notice of Motion, a Memorandum of Law, a Reply Memorandum of Law, and a Notice of Renewal of Adjourned Motion to Strike Plaintiffs' Demand for a Jury Trial. In opposition to defendants' motion, plaintiffs have submitted a Memorandum of Law Opposing Defendants' Motion to Strike Plaintiffs' Jury Request, and a Memorandum of Law in Opposition to Defendants' Motion to Strike Jury Demand.

For the reasons that will be discussed below, defendants' motion to strike plaintiffs' jury demand will be Denied.

### PROCEDURAL BACKGROUND

In this lawsuit, plaintiffs allege that they are entitled to unpaid severance benefits under their employer's ERISA severance pay plan, pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Defendants' severance pay plan is part of a Key Employee Retention Plan ("KERP") that was instituted by LTV for the benefit of certain LTV employees. Additionally, plaintiffs seek attorney fees under § 502(g) of ERISA, 29 U.S.C. § 1132(g). Plaintiffs allege that defendants' decision to deny them severance benefits under KERP was arbitrary and capricious because defendants unreasonably construed certain terms contained in KERP governing plaintiffs' eligibility for benefits. Furthermore, plaintiff George Davidson seeks additional severance benefits from defendants, alleging that defendants unreasonably decided to award him thirteen fewer weeks of benefits upon his termination than were awarded to the other plaintiffs. Other than attorney fees, the only remedy sought in this case is damages in the form of unpaid severance benefits.

On September 30, 1993 this Court entered a Decision and Order [the "Decision"] denying defendants' motion for summary judgment. This Court determined that plaintiffs had indicated facts in the record sufficient to create a genuine issue of whether the decision of the plan administrator [the "Committee"] to deny plaintiffs KERP benefits was improperly motivated by a conflict of interest. Furthermore, this Court found that the

language of KERP is ambiguous as to the terms governing plaintiffs' entitlement to benefits. Although this Court recognized that it could not substitute its own interpretation of ambiguous language for an administrator's reasonable, good faith interpretation, the ambiguous language, as well as other facts in the record, were considered in light of the existing evidence of a conflict of interest. After undertaking such a consideration, keeping in mind LTV's poor financial situation, the ongoing nature of workforce reductions, and the purposes of KERP and ERISA severance plans in general, this Court held that it could not say as a matter of law that the Committee's decision was not arbitrary and capricious. Therefore, this Court explained, "A trier of fact must consider the Committee's interpretation of the ambiguous language in light of the facts and circumstances addressed [in the Decision]." (Decision, p. 27).

Now, this Court must determine who the trier of fact will be. For the following reasons, the trier of fact will be a jury.

### DISCUSSION

Defendants have moved to strike plaintiffs' demand for a jury trial. Federal Rule of Civil Procedure 12(f) provides:

Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

In this case, plaintiffs' demand for a jury trial can be stricken as "immaterial" or "impertinent" only if this Court determines that neither ERISA nor the Seventh Amendment invests plaintiffs with the right to a jury trial.

The first case to examine this issue thoroughly was *Stamps v. Michigan Teamsters Joint Council 43*, 431 F.Supp. 745 (E.D.Mich. 1977). In *Stamps*, the court held that, although ERISA does not explicitly address the issue of a plaintiff's right to a jury trial, ERISA's statutory scheme and legislative

history indicate that Congress intended that a plaintiff be entitled to a jury trial where he is suing under § 502(a)(1)(B) to recover benefits owed to him under the terms of his plan. The court interpreted § 502 as distinguishing between legal and equitable claims. Section 502 of ERISA provides, in relevant part:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .;

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

In *Stamps*, the court read § 502 as setting forth two alternative remedies available to a plaintiff beneficiary. The court wrote, "Subsection (a)(3) clearly and specifically creates a civil action for equitable relief. Subsection (a)(1)(B) creates a different civil action for legal relief." *Id.* at 747. The court referred to the general rule of statutory construction that statutes should be construed in such a way as to render none of the statutory sections superfluous. The court believed that if it "construed subsection (a)(1)(B) to also create a cause of action for equitable relief, it would be superfluous to subsection (a)(3)." *Id.*

The *Stamps* court found further support for its position in portions of ERISA's legislative history indicating that actions under § 502 should be guided by case law developed under section 301 of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. The court cited the following portion of the Joint Explanatory Statement of the Committee of Conference:

All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion

to those brought under section 301 of the Labor–Management Relations Act of 1947. *Id.* at 747 (quoting H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 5038, 5107). Section 301 of the LMRA provides that a labor union may sue or be sued for breach of a collective bargaining agreement. Furthermore, an individual employee who is a union member may sue the union pension fund where the pension fund agreement is part of a contract between the union and the employer. *Id.* at 746 (citing *Abruscateo v. Local 199*, 69 LRRM 2537 (S.D.N.Y.1968); *Smith v. DCA Food Indus., Inc.*, 269 F.Supp. 863 (D.Md.1967)). Under § 301 of the LMRA, an employee who sues for money damages resulting from an alleged breach of a collective bargaining agreement is entitled to a jury trial on request. *Id.* (citing *Lucas v. Philco–Ford Corp.*, 380 F.Supp. 139 (E.D.Pa.1974)). Therefore, the *Stamps* court concluded, by reference to the LMRA, that a plaintiff suing for pension benefits due under § 502(a)(1)(B) of ERISA is stating a legal claim for breach of contract, and is entitled to a jury trial. *Id.* at 747.

*Stamps* has not received approval from the circuit courts. For instance, in *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), the Seventh Circuit concluded that Congress' silence on the jury trial issue "reflects an intention that suits for pension benefits by disappointed applicants are equitable. Such suits under the law of trusts have existed for quite a while in state courts and have existed for quite a while in federal courts under their diversity jurisdiction." *Id.* at 829. Therefore, the *Wardle* court determined that jury trials are not required. *But see* George Lee Flint, Jr., *ERISA: Jury Trial Mandated for Benefit Claims Actions*, 25 LOY.L.REV. 361, 386–87 (1992) ("Investigation of pre-ERISA state

cases reveals that most courts viewed benefits-due lawsuits as contractual"); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) ("Actions challenging an employer's denial of benefits before enactment of ERISA were governed by principles of contract law.").

The *Wardle* court rejected *Stamps'* conclusion that if § 502(a)(1)(B) were read as providing equitable relief, then that subsection would be superfluous in light of § 502(a)(3). The court wrote, "The specific types of claims enumerated in § 502(a)(1)(B) would still have to be separated in some manner from general equitable actions under § 502(a)(3) because Congress granted state courts concurrent jurisdiction only over § 502(a)(1)(B) claims. 29 U.S.C. § 1132(e)(1). Thus the statutory scheme does not imply that § 502(a)(1)(B) claims are legal." *Wardle*, 627 F.Supp. at 829. Furthermore, the court stated that *Stamps* incorrectly interpreted the legislative history of ERISA. *Wardle* suggests that the quoted portion of the Committee Statement

> merely indicates Congress' intent that federal courts should create federal common law in civil actions under § 502(a)(1)(B) of ERISA, just as the Supreme Court in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), ruled that the courts could establish federal common law for claims "arising under" § 301 of the [LMRA]. *See Reiherzer v. Shannon*, 581 F.2d 1266, 1271 (7th Cir.1978). The Committee states that § 502(a)(1)(B) claims are to be regarded "in similar fashion" to § 301 actions, not that the identical rules of federal common law are necessarily to apply in both statutory claims.

*Id.*[1]

*Wardle* has been relied upon by other circuit courts holding that a plaintiff suing un-

---

1. Although the arguments asserted in *Stamps* and *Wardle* regarding the Committee Statement appear to be in equipoise, this Court notes that in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court referred to this same Statement in resolving the issue of whether the civil enforcement provisions contained in § 502(a) of ERISA were

intended by Congress to preempt state law remedies. The Court drew an analogy between § 502(a)(1)(B) of ERISA and § 301 of the LMRA, stating that "Congress was well aware that the powerful pre-emptive force of § 301 of the LMRA displaced all state actions for violation of contracts between an employer and a labor organization, even when the state action purported to

der § 502(a)(1)(B) is not entitled to a jury trial, *See, e.g., Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980). To date, each of the circuit courts that have resolved this issue has held that no jury trial is warranted. *See Wardle,* 627 F.2d 820; *Calamia,* 632 F.2d 1235; *In re Vorpahl,* 695 F.2d 318 (8th Cir. 1982); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985);[2] *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003 (4th Cir.1985); *Turner v. CF & I Steel Corp.,* 770 F.2d 43 (3d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Blake v. Unionmutual Stock Life Ins. Co.,* 906 F.2d 1525 (11th Cir.1990).

Within the Second Circuit, the district courts have split on the issue. Some courts have held that, at least in some circumstances, § 502(a)(1)(B) impliedly secures the right to a jury trial, and/or that such a right is guaranteed by the Seventh Amendment. *See Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd without opinion,* 622 F.2d 575 (2d Cir.1980); *Paladino v. Taxicab Indus. Pension Fund,* 588 F.Supp. 37 (S.D.N.Y.1984); *Abbarno v. Carborundum Co.,* 682 F.Supp. 179 (W.D.N.Y.1988); *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 882 (S.D.N.Y.1990); *Weber v. Jacobs Mfg. Co.,* 751 F.Supp. 21 (D.Conn.1990); *Resnick v. Resnick,* 763 F.Supp. 760 (S.D.N.Y. 1991); *Smith v. Union Mut. Ins. Co.,* 1990 WL 209456 (S.D.N.Y.1990); *Dawes v. First Unum Life Ins. Co.,* 1992 WL 350778 (S.D.N.Y.1992). Other sister courts have held that there exists no such right. *See*

*Nobile v. Pension Comm. of the Pension Plan for Employees of New Rochelle Hosp.,* 611 F.Supp. 725 (S.D.N.Y.1985); *Gardella v. Mutual Life Ins. Co. of New York,* 707 F.Supp. 627 (D.Conn.1988); *In re Emhart Corp.,* 706 F.Supp. 153 (D.Conn.1988); *Brock v. Group Legal Adm'rs, Inc.,* 702 F.Supp. 475 (S.D.N.Y.1989); *Clay v. ILC Data Device Corp.,* 771 F.Supp. 40 (E.D.N.Y.1991).

The Second Circuit has not spoken definitively regarding this issue; however, there is authority indicating that the Second Circuit is not prepared to join the various circuits that have recognized no right to a jury trial. In *Haeberle v. Board of Trustees of Buffalo Carpenters Health–Care, Dental, Pension and Supplemental Funds,* 624 F.2d 1132, 1136 (2d Cir.1980), the Second Circuit expressed "reservation about the practice of taking [an ERISA claim for unpaid benefits] away from a jury, rather than setting aside an incorrect verdict...." As the court noted in *Paladino,* 588 F.Supp. 37:

> This statement may well be regarded as *dictum,* but it is rare for the Court of Appeals in this Circuit to criticize a trial judge, especially when the judgment appealed from is being affirmed. This Court believes that, although *dictum,* the statement in *Haeberle* is well-considered *dictum,* and reflects a view, which this Court shares, that private civil litigation seeking to enforce rights under ERISA should be tried to a jury, where as in this case, disputed issues of fact exist. If the use of the jury in *Haeberle* were surplus, there would be no purpose in stating the criticism.

*Id.* at 41.

Moreover, in *Pollock v. Castrovinci,* 622 F.2d 575 (2d Cir.1980), the Court of Appeals

authorize a remedy unavailable under the federal provision. Section 301 pre-empts any 'state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.' " *Id.* at 55, 107 S.Ct. at 1557 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985)). One commentator has reasoned that "[i]f it is so clear that Congress' specific reference to section 301 to explain ERISA's civil enforcement scheme is evidence of its intent that all suits brought to challenge processing of claims be treated as federal questions under section 502(a), then it can be inferred just as easily that Congress intended

to provide ERISA litigants with the LMRA's access to jury trial." Ann Bersi, *The Road Less Traveled is the Better Way: New Routes to the Right to a Jury Trial in ERISA Section 502(a)(1)(B) Actions,* 27 CAL.W.L.REV. 431, 440 (1991). *See also id.* at 440 n. 67 (noting that in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court referred to § 301 of the LMRA in holding that § 510 of ERISA preempted a state common law claim for wrongful discharge).

2. *See also Spinelli v. Gaughan,* 12 F.3d 853 (9th Cir.1993).

affirmed a district court ruling that the issue of determining benefits due according to the terms and provisions of an ERISA plan is a legal issue triable to a jury. *See Pollock*, 476 F.Supp. at 609. The district court distinguished the issue of whether the plan should be reformed, which would be an equitable issue triable to the court. *Id.*

In *Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Second Circuit held that the plaintiffs were not entitled to a jury trial where they sought the equitable remedies of removal of the plan trustee, and restitution resulting from losses to the plan fund due to misconduct on the part of the plan administrator. The court wrote:

> Nor were appellants entitled to a jury trial of the claims against them since the plaintiffs seek equitable relief in the form of removal and restitution *as distinguished from damages for wrongdoing or non-payment of benefits*. There is no right to a jury trial of ERISA actions against pen-

sion fund trustees seeking the equitable remedy of restitution.

*Id.* at 278 (emphasis added). Thus the Second Circuit manifestly drew a distinction between cases seeking the equitable remedy of restitution and cases seeking unpaid benefits according to the terms of an ERISA plan. Although, as defendants note, this passage is accompanied by citations to *Vorpahl, Calamia, Wardle*, and other circuit court cases finding that plaintiffs are not entitled to a jury trial on claims brought under § 502(a)(1)(B) of ERISA, this Court believes that the Second Circuit did not intend to draw a distinction without a difference. And although the court in *Katsaros* expressly declined to follow *Pollock* as authority for a jury trial, the court did so only because resolution of the equitable issues in *Pollock* rendered any legal issues moot, and because the *Katsaros* court otherwise believed that the claim raised by the plaintiff in *Pollock* was "essentially equitable."[3] *Katsaros*, 744 F.2d at 278–79.

**3.** Defendants argue that by describing the claims in *Pollock* as "essentially equitable" the Second Circuit was announcing a general rule that claims for unpaid benefits are equitable claims that do not entitle plaintiffs to a jury trial. This Court does not read the Second Circuit's language so broadly. Even if the Second Circuit disagreed with the district court's conclusion in *Pollock* that the benefits due under any reformed plan presented a legal issue triable to a jury, this would not lead to the conclusion that *all* claims for unpaid benefits are equitable. It is important to note that in *Pollock* the district court explained that "[a]ll of the alleged [ERISA] violations [arose] directly out of the amendment to the plan and the recapture of the surplus." *Pollock*, 476 F.Supp. at 614. The district court was apparently of the view that, although the plaintiff's substantive claim was equitable, the potential remedy may have posed legal issues for jury determination. In the present case, however, plaintiffs are seeking a remedy in connection with what they argue is essentially a legal claim. As this Court will discuss further below, the present dispute arises from alleged wrongdoing, and the plan administrator's consequent misinterpretation of the terms and provisions of a written plan document. If these allegations present claims at law, then plaintiffs demonstrate a greater entitlement to a jury trial than the plaintiffs in *Pollock*, whose threshold claims were acknowledged by the plaintiffs themselves to be equitable. Therefore, even if the Second Circuit believed that in *Pollock* there existed no legal issues of fact susceptible to jury resolution, this

would not preclude a jury trial where a plaintiff's claim is determined to be legal in nature, in contrast to the claim for amendment of the ERISA plan in *Pollock*. *See Weber*, 751 F.Supp. at 24 ("*Katsaros* would not preclude a jury trial where a plaintiff is seeking relief other than that which is considered equitable in nature."); *Abbarno*, 682 F.Supp. at 181 ("[I]t seems more appropriate to read *Katsaros* as establishing a rule that ERISA actions can be tried to a jury provided the particular ERISA claim at hand is legal in nature—e.g., a claim for non-payment of benefits.").

Furthermore, as this Court will discuss below in relation to the Seventh Amendment, a court evaluating a plaintiff's demand for a jury trial must consider both the nature of the claim and the nature of the relief sought. Ordinarily, the second of these considerations is more important. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). Therefore, even if plaintiffs' claims in the present case would more properly be labeled "essentially equitable", plaintiffs may nonetheless be entitled to a jury trial under the Seventh Amendment if the relief sought, that is, money damages in the form of unpaid benefits, is determined to be a legal remedy. *See McDonald v. Artcraft Elec. Supply Co.*, 774 F.Supp. 29, 34 (D.D.C.1991), in which the court stated, "The *Katsaros* Court was very careful to distinguish, however, an ERISA action like the one before it where equitable relief was sought and an ERISA suit seeking monetary damages.... [T]he Sec-

In neither *Katsaros* nor *Pollock* did the Second Circuit have the opportunity to elaborate on the distinction drawn in *Katsaros* between claims for restitution and claims for unpaid benefits under § 502(a)(1)(B). Nonetheless, after examining the nature of such claims in light of ERISA's statutory scheme and legislative history, as well as the Seventh Amendment, this Court has concluded that plaintiffs in the present case are asserting legal claims for unpaid benefits, and that the distinction drawn by the Second Circuit in *Katsaros* entitles them to a jury trial on these claims. *See, e.g., Vicinanzo,* 739 F.Supp. 882 (declining to strike plaintiff's jury demand on statutory and constitutional grounds, in case brought under ERISA § 502(a)(1)(B)); *Abbarno,* 682 F.Supp. 179.

■ Plaintiffs argue that they have a right to a jury trial on their claims, which right is provided by ERISA itself and the Seventh Amendment. Even if this Court determines that plaintiffs have no constitutional right to a jury trial, this Court may still find that Congress has implicitly provided such a right by the statutory scheme of ERISA. The Seventh Amendment does not prevent Congress from providing a right·to a jury trial where a new statutory remedy is made available to litigants. *The Propeller Genesee Chief v. Fitzhugh,* 12 How. 443, 53 U.S. 443, 13 L.Ed. 1058 (1851).

Therefore, this Court must first determine whether ERISA itself either expressly or impliedly secures the right to a jury trial for plaintiffs who sue for unpaid severance benefits under § 502(a)(1)(B) of ERISA. *See Curtis v. Loether,* 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 1007 n. 6, 39 L.Ed.2d 260 (1974) (recognizing the " 'cardinal principle that a court must first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.' " (quoting *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971))).

ond Circuit read the case law to preclude a right to a jury trial only when traditionally equitable

*Statutory Right to a Jury*

■ In the present case, plaintiffs are suing under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides:

A civil action may be brought—

(1) by a participant or beneficiary—

.    .    .    .    .

... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Nowhere does the statute expressly indicate whether the "civil action" may be tried before a jury. "Where congressional intent on the subject of a jury trial is not clear from the statutory language, a court must look to the pre-statutory custom with respect to such actions." *McDonald,* 774 F.Supp. at 33. Furthermore, in *Vicinanzo,* Chief Judge Brieant explained that "in determining the scope of an implied statutory right to a jury trial, it is essential to consider interests broader than those protected by the Constitution—including whether 'the crux of the case [is] a factual determination' of the sort traditionally made by common law juries." *Vicinanzo,* 739 F.Supp. at 886 (quoting *Brock,* 702 F.Supp. at 476).

Prior to the enactment of ERISA, actions for recovery of benefits due were governed by the principles of contract law. *Firestone,* 489 U.S. at 112, 109 S.Ct. at 955 (discussing an ERISA severance pay plan); Flint, *supra,* at 386. *See also DiProsa v. Post Corp.,* 99 A.D.2d 653, 472 N.Y.S.2d 65 (4th Dept.1984) (jury trial involving claim for severance benefits); Flint, *supra,* at 386 ("Some plans are unfunded and thus have no trust element.") (In the present case, defendants sponsored and administered an unfunded ERISA plan.). In *Resnick,* the court wrote:

An action challenging a denial of benefits closely resembles a contract dispute. In such an action, a plaintiff is seeking damages for non-payment of benefits, a claim that is essentially legal in nature. A court determines a plaintiff's entitlement to ben-

claims were at issue."

efits by applying principles of contract law to construe the terms of the plan rather than by looking to equitable principles. *Resnick,* 763 F.Supp. at 765. Here, plaintiffs are seeking damages for denial of severance benefits. This Court believes that the dispute is essentially legal in nature. The factfinder will have to consider the Committee's interpretation of the ambiguous KERP language in light of all the attendant facts and circumstances, including the evidence of a conflict of interest. Although the ultimate determination to be made by the factfinder will be whether the Committee's interpretation was arbitrary and capricious (a standard that has been described as "incompatible with a jury trial scheme," *Berry,* 761 F.2d at 1006), this factor does not make trial by jury unavailable to plaintiffs.

In *Paladino,* the plaintiff sought a declaratory judgment regarding his right to pension benefits due at the time and to become due in the future. The defendant claimed that the plaintiff had not accumulated enough continuous service credits in the industry to be entitled to a pension. The dispute therefore centered around the issue of whether the defendant's decision to deny the plaintiff benefits was arbitrary and capricious, in light of the terms of the ERISA plan. In recognizing the plaintiff's right to a jury trial, the court wrote:

> Plaintiff seeks to have the Court review the exercise of fiduciary powers by trustees within the rubric of "arbitrary and capricious," or according to the standard of whether the decision is supported by substantial evidence. The trier of fact in an ERISA enforcement action is not authorized to substitute his, her or its judgment and discretion for that of the trustees. However, beneath this seemingly "equitable" issue, there lurks a simple question: whether plaintiff had a break in his service in the taxicab industry which forfeited his prior service credit. This represents a pure issue of fact and is the sort of question which is particularly appropriate for resolution by a trial jury.

*Paladino,* 588 F.Supp. at 39. Similarly, although the trier of fact in the present case will be required to determine whether the Committee acted arbitrarily and capriciously in denying the plaintiffs severance benefits, this determination will depend heavily upon issues of fact, such as motivation and state of mind. These types of issues are best resolved by a jury.

In *McDonald,* the district court distinguished circuit court cases such as *Calamia* and *Berry* holding that certain ERISA claims are equitable in nature, by explaining that those cases "relied on case law subsequently repudiated by the Supreme Court" in *Firestone. McDonald,* 774 F.Supp. at 34. *McDonald* notes that, prior to *Firestone,* federal courts typically applied the "arbitrary and capricious" standard to review the actions of plan administrators: a standard that is associated with the law of trusts. *Id.* However, *McDonald* further explains that in *Firestone* the Supreme Court held that, under ERISA, the administrator's actions should ordinarily be subject to *de novo* review, so as to comport with one of the objectives of the statute: "to promote the interests of employees and their beneficiaries in employee benefits plans." *Firestone,* 489 U.S. at 113, 109 S.Ct. at 955 (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1982)). The *McDonald* court wrote:

> *Firestone* marks a significant turning point in the interpretation of ERISA law. The Supreme Court views ERISA claims as analogous to contract actions prior to ERISA. Contract actions are legal in nature. Furthermore, they are generally fact-intensive disputes. In other words, they are quintessential jury issues. If a right to a jury existed prior to the passage of ERISA, then to hold that no such right exists under ERISA would "afford less protection" to employee rights than they had before the Act was passed—a result the Supreme Court squarely rejected in *Firestone.*

*McDonald,* 774 F.Supp. at 34. *See Firestone,* 489 U.S. at 108, 109 S.Ct. at 953 (§ 502(a)(1)(B) "allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement

to benefits under the provisions of the plan *contract.*") (emphasis added).

Although in *Firestone* the Supreme Court held that the "arbitrary and capricious" standard of review is appropriate in cases where the benefits plan gives the plan administrator the fiduciary discretionary authority to construe the terms of the plan, *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57, this Court does not believe that, in light of the goals of ERISA, Congress would have intended that a plaintiff's right to a jury trial would hinge upon whether the plaintiff's employer chose to give interpretive authority to the plan administrator. This is especially so where the administrator of an unfunded plan is a committee comprised of members of the employer's board of directors, and where there is some indication of a conflict of interest.

■ ERISA was enacted to afford more protection to employees and their beneficiaries than existed under prior law, *see* 29 U.S.C. § 1001, and "to protect contractually defined benefits," *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). The Congressional Committee reports reflect these objectives:

The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R.Rep. No. 533, 93d Cong., 2d Sess. 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4655; S.Rep. No. 127, 93d Cong., 2d Sess. 1, 35 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4871. Whereas claims for benefits were ordinarily considered actions at law triable to a jury prior to the enactment of ERISA, it appears unlikely that Congress would have intended that important right to be extinguished by ERISA, in view of the statutory objectives discussed above. *See McDonald,* 774 F.Supp. at 34; *Padilla De Higginbotham v. Worth Publishers, Inc.,* 820 F.Supp. 48 (D.P.R.1993).

■ For these reasons, this Court believes that in § 502(a)(1)(B) of ERISA, Congress impliedly left intact a plaintiff's right to a jury trial on a claim for recovery of unpaid benefits under an ERISA plan.

*Seventh Amendment Right to a Jury Trial*

The Seventh Amendment provides as follows:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const.Amend. VII. "The right to a jury trial includes more than the common-law forms of actions recognized in 1791; the phrase "Suits at common law" refers to "suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Chauffers, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 28 U.S. 433, 447, 7 L.Ed. 732 (1830)). "The right extends to causes of action created by Congress." *Id.* (citing *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). It is "not lost where legal and equitable issues are presented in a single case or where legal issues are only 'incidental' to equitable issues." *Vicinanzo,* 739 F.Supp. at 887 (citing *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)). Moreover, the Supreme Court has explained:

Since the merger of the systems of law and equity ... this Court has carefully preserved the right to trial by jury where legal rights are at stake. As the Court noted in *Beacon Theatres, Inc. v. Westover,* " 'Maintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' " 359 U.S. 500, 501, 79 S.Ct. 948, 952, 3 L.Ed.2d 988 (1959) (quoting *Dimick v. Schiedt,* 293

U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)).

*Id.* 494 U.S. at 565, 110 S.Ct. at 1344–45. The Supreme Court has enunciated a two-pronged test for determining whether a particular action will resolve legal rights:

> ... [W]e examine both the nature of the issues involved and the remedy sought. "First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull, supra,* 481 U.S., at 417–418, 107 S.Ct., at 1835–1836 (citations omitted). The second inquiry is the more important in our analysis. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. [33], [42], 109 S.Ct. 2782, [2790], 106 L.Ed.2d 26 (1989)

*Id.* at 565, 110 S.Ct. at 1345 (footnote omitted). Nevertheless, the remedy being sought need not be considered "legal" simply because it takes the form of a money award. *Id.* at 570, 110 S.Ct. at 1347.

The tendency of the federal courts to guard jealously the right to a trial by jury is aptly demonstrated by developments in the Eleventh Circuit. In *Whitt v. Goodyear Tire & Rubber Co.,* 676 F.Supp. 1119 (N.D.Ala. 1987), *rev'd, Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430 (11th Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989), Hon. William M. Acker, Jr., United States District Judge for the Northern District of Alabama, held that the plaintiffs were constitutionally entitled to a jury trial on their § 502(a)(1)(B) claim for unpaid benefits that were presently due and owing. In his decision, Judge Acker acknowledged that in a case he had decided shortly before *Whitt* (see *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987),[4] he had refused to recognize a plaintiff's right to a jury trial on a § 502(a)(1)(B) claim, prompting the Judge to observe in *Whitt,* "This embarrassing fact not only presents

this court with a sense of *deja vu* but this court is now being asked by plaintiffs to swim upstream against a current to which this court contributed some volume of downhill water, however slight." *Whitt,* 676 F.Supp. at 1122. Therefore, like a salmon swimming upstream, Judge Acker undertook to address the issues that were spawned by the Eleventh Circuit's decision in *Howard.* First of all, he distinguished *Calamia* and *Wardle,* indicating that these cases should not be applied where a plaintiff is seeking legal relief, and that these cases do not fully confront the Seventh Amendment issues involved. He suggested that the Eleventh Circuit misread the Second Circuit's decision in *Katsaros,* and explained that the *Katsaros* court meant to distinguish equitable claims seeking remedies like removal of a plan trustee and restitution due to breach of fiduciary duty from legal claims seeking legal remedies like the payment of monies due and owing under the terms of an ERISA benefits plan. *Whitt,* 676 F.Supp. at 1123. Judge Acker proceeded to quote at length a Harvard Law Review article that this Court has also relied upon in resolving the Seventh Amendment issue before it. *See* Note, *The Right to Jury Trial in Enforcement Actions under Section 502(a)(1)(B) of ERISA,* 96 HARV.L.REV. 737 (1983). Judge Acker also discussed the Supreme Court's decision in *Tull,* which held that the Seventh Amendment guarantees the right to a jury trial in actions for civil penalties and injunctive relief under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* He concluded by holding that plaintiffs were entitled to a jury trial on any issues of fact that existed with regard to their § 502(a)(1)(B) claim.

Although Judge Acker confessed to being embarrassed about his reversal of position on the jury trial issue, he was certainly even more embarrassed when, a little more than two weeks after handing down his decision in *Whitt,* he had to file a "Supplemental Memorandum Opinion" reversing his position once

---

**4.** In *Howard,* the Eleventh Circuit did not address the district court's decision to strike the plaintiff's jury demand. However, in *dictum,* the Eleventh Circuit wrote, "The former Fifth Circuit squarely held that such actions are not entitled to trial by jury. *Calamia v. Spivey,* 632 F.2d 1235,

1236–37 (5th Cir.1980). Every other circuit addressing the issue has reached the same conclusion. *See, e.g., Katsaros v. Cody,* 744 F.2d 270, 278–79 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (other citations omitted)...." *Howard,* 807 F.2d at 1567.

again, in deference to Eleventh Circuit authority. In his Supplemental Opinion, Judge Acker wrote:

> When this court entered its memorandum opinion on December 4, 1987, and the accompanying order, it recognized that it might be swimming upstream, but it did not know that it was being engulfed in the tidal wave of *Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620 (11th Cir.1987), decided by the Eleventh Circuit on April 13, 1987, three months after *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir. 1987), was decided on January 20, 1987.

*Whitt*, 676 F.Supp. at 1132. In *Chilton*, the Eleventh Circuit held, on the authority of *Calamia*, that there is no right to a jury trial under § 502(a)(1)(B). Judge Acker noted that *Chilton* was decided before the Supreme Court handed down its decision in *Tull*; however, because *Tull* did not address the Seventh Amendment in an ERISA context, he believed that he could not avoid the impact of *Chilton*. Nonetheless, he noted:

> This court's opinion of December 4, 1987, makes clear this court's firm, personal belief in the supremacy of the Seventh Amendment over any implication against jury trial derived simply from congressional silence in a federal statute creating a new cause of action. The Eleventh Circuit either has not yet been called upon to address, or has not addressed, the Seventh Amendment when comparing ERISA claims which are kin to traditional common law claims and ERISA claims which are like those formerly dealt with by the chancellor.

*Whitt*, 676 F.Supp. at 1133.

*Whitt* was not Judge Acker's last word on this issue. In *Rhodes v. Piggly Wiggly Alabama Distrib. Co., Inc.*, 741 F.Supp. 1542 (N.D.Ala.1990), Judge Acker purported to have swum up the tidal wave of *Chilton*. In *Rhodes*, he cited *Vicinanzo* and *Abbarno* with approval, and held that in light of recent

Supreme Court decisions, including *Tull*, plaintiffs suing under § 502(a)(1)(B) are guaranteed the right to a jury trial under the Seventh Amendment. After proceeding through an extensive analysis of the history of the Seventh Amendment, Judge Acker concluded by writing:

> ... the correct explanation for the absence of any reference to jury trial in ERISA ... insofar as claims of legal entitlement are concerned, is a conscious recognition by Congress of the Seventh Amendment imperative. The Seventh Amendment supplies the right to a jury trial, making any legislative expression on the subject mere surplusage.
>
> Now, surrounded by good company, including the Supreme Court, this court has lost the timidity it displayed in *Whitt* and will deny defendants' motion to strike plaintiff's jury demand in this ERISA case.

*Id.* at 1546.

This Court does not necessarily agree with all the aspects of Judge Acker's analysis of the Seventh Amendment implications regarding the present issue.[5] However, this analysis is enlightening insofar as it demonstrates a proper reluctance to find that a jury trial is not available in cases where factual issues are to be resolved and a monetary award in the form of unpaid benefits is sought. *See, generally,* Bersi, *supra* (explicating the treatment of the present issue in *Whitt, Chilton,* and *Rhodes* ).

In this spirit, this Court must determine whether the Seventh Amendment affords the plaintiffs in this case the right to a jury trial on their claims for unpaid benefits allegedly due under KERP. This Court will consider both the nature of the issues being litigated, and the nature of the relief sought. Because "characterization of the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment

---

5. It must be noted that two days before *Rhodes* was decided, the Eleventh Circuit held that a lawsuit under § 502(a)(1)(B) seeking recovery of health benefits stated a claim for equitable relief, and did not entitle plaintiffs to a jury trial under the Seventh Amendment. *Blake v. Unionmutual Stock Life Ins. Co. of America*, 906 F.2d 1525 (11th Cir.1990). *But see Blue Cross and Blue Shield of Alabama v. Lewis*, 753 F.Supp. 345 (N.D.Ala.1990) (Acker, J.) (noting limitations of Eleventh Circuit's holding in *Blake* in light of *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

guarantees a jury trial," *Tull,* 481 U.S. at 421, 107 S.Ct. at 1837 (quoting *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009), this Court will first proceed to characterize the nature of the relief being sought by plaintiffs.

*Nature of the Relief Sought*

To reiterate, plaintiffs are suing to recover unpaid severance benefits that they allege are presently due and owing to them according to the terms of KERP. Although the fact that a monetary award is being sought does not compel a finding that the requested relief is legal in nature, *Terry,* 494 U.S. at 570, 110 S.Ct. at 1347, the requested relief happens to be legal in this case.

Three types of remedies are available under ERISA: recovery of benefits, enforcement of rights, and clarification of rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). "Recovery of benefits is a retrospective remedy similar to compensatory damages and thus is legal in nature." Note, *supra,* at 752. For instance, where ERISA pension benefits are at issue, "beneficiaries ordinarily seek recovery of accrued monthly benefits rather than restoration of past pension contributions...." *Id.* at 753. In suits to recover those benefits, "the award of benefits differs from equitable restitution, which might merely refund the beneficiary's past contributions to the pension plan. Therefore, a beneficiary asking for accrued monthly benefits seeks a legal remedy." *Id.* at 753. *See also id.,* notes 123–125.

With this understanding, it becomes evident that when the Second Circuit drew a distinction in *Katsaros* between "equitable relief in the form of removal and restitution" and "damages for wrongdoing or non-payment of benefits," 744 F.2d at 278, it was simply recognizing the difference between the equitable remedies that were being requested in that case—removal of the plan trustee, and restitution resulting from losses to the plan fund due to misconduct on the part of the plan administrator—and traditionally legal remedies, such as a retrospective recovery of benefits "similar to compensatory damages and thus [ ] legal in nature." Note, *supra,* at 752. In the present case, the relief demanded by plaintiffs falls into the latter category. *See Abbarno,* 682 F.Supp. at 181 (characterizing suit for unpaid severance benefits as one that "does not seek equitable relief.") The implementation of the "arbitrary and capricious" standard in this case does not change the nature of the remedy being sought. *Id.* at 181 n. 2.

This conclusion is consistent with the principles set forth in *Vicinanzo,* 739 F.Supp. 882, which observed that "recent Supreme Court jurisprudence in the area of ERISA ... [demonstrates] that the Seventh Amendment extends to a wide variety of disputes over entitlement to money." *Id.* at 890. Similarly, in discussing the remedies available to a plan beneficiary under § 502(a)(1)(B) of ERISA, the Supreme Court has written:

> If in this case, for example, the plan administrator had adhered to his initial determination that respondent was not entitled to disability benefits under the plan, respondent would have had a panoply of remedial devices at her disposal. To recover the benefits due her, she could have filed an action pursuant to § 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future. If the plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations, respondent in this hypothetical could have asked for removal of the fiduciary pursuant to §§ 502(a)(2) and 409.

*Russell,* 473 U.S. at 146–47, 105 S.Ct. at 3092–93. This Court believes that the Supreme Court's treatment of the "recovery of benefits" remedy available to a beneficiary under § 502(a)(1)(B), and its comparison of that remedy to others available under ERISA, strongly suggest that the Supreme Court views recovery of benefits under that section as a traditionally legal remedy, akin to damages in a breach of contract action. *See also Terry,* 494 U.S. at 573, 110 S.Ct. at 1349 (plaintiffs' claims for lost wages and benefits under § 301 of the LMRA sought legal remedies, not the equitable remedy of restitution; therefore, plaintiffs were entitled

to a jury trial); *Seafarers Pension Plan v. Sturgis,* 630 F.2d 218 (4th Cir.1980) (jury trial utilized to resolve plaintiff's claim against trustees of union pension plan for disability pension benefits under LMRA; jury required to apply "arbitrary and capricious" standard); *Weber,* 751 F.Supp. at 25.

Having determined that plaintiffs are seeking legal relief, this Court must now turn to address the nature of the issues being litigated by the parties. *Terry,* 494 U.S. at 565, 110 S.Ct. at 1345.

*Nature of the Issues to be Tried*

Although "ERISA abounds with the language and terminology of trust law," *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954, and although employee benefit plans are typically administered by a fiduciary or "trustee", this Court has already indicated that, prior to the enactment of ERISA, actions to recover benefits allegedly due from an employer were governed by contract law principles. It is true that ERISA established new mechanisms to protect the contractually defined benefits of employees; however, the closest eighteenth century analogue to the present action would be a claim for breach of contract. *Pratt v. Petroleum Prod. Mgmt. Employee Sav. Plan,* 920 F.2d 651, 658 (10th Cir.1990) ("Plaintiff sought relief under ERISA § 502(a)(1)(B), a statutory provision allowing an ERISA 'breach of contract' action."); *Vicinanzo,* 739 F.Supp. at 890 ("contests over the meaning of ambiguous plan provisions—the resolution of which often results in the recovery of money damages or a declaration as to whether money will be recovered in the future—more closely resemble legal than equitable claims."); *Pegg v. General Motors Corp.,* 793 F.Supp. 284, 286 (D.Kan.1992) (finding no Seventh Amendment right to jury trial on plaintiff's § 502(a)(1)(B) claim for recovery of "separation" pay; court found that plaintiff was seeking an essentially equitable remedy, but conceded that claim was analogous to breach of contract action). *See also* Flint, *supra,* at 386–87, 410–413.

More importantly, *Terry* instructs that " '[t]he Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action.' " *Terry,* 494 U.S. at 569, 110 S.Ct. at 1346 (emphasis in original) (quoting *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)). In *Terry,* the Supreme Court

... placed great analytical weight on the individual issues to be proved at trial. The Court noted that "to recover from the Union here, respondents must prove both that the [the employer] violated § 301 by breaching the collective-bargaining agreement and that the Union breached its duty of fair representation." *Local 391,* 493 [494] [sic] U.S. at [569], 110 S.Ct. at 1347. The Court conceded that "[w]hen viewed in isolation, the duty of fair representation issue is analogous to a claim against a trustee for breach of fiduciary duty[,]" but it found that the antecedent question— whether respondents had a meritorious claim under § 301 for breach of the collective bargaining agreement—was "comparable to a breach of contract claim—a legal issue." *Id.*

*Vicinanzo,* 739 F.Supp. at 888.

Likewise, in *Ross,* the Court recognized a Seventh Amendment right to a jury trial in a shareholder's derivative suit. Although this type of suit was traditionally brought in courts of equity, the Court nevertheless believed that a jury trial was warranted because plaintiffs' case presented legal issues, including the issue of whether a contract was breached.

In the present case, the issues to be tried include the proper interpretation of ambiguous plan language in light of the surrounding facts and circumstances, including the possibility of an improper conflict of interest. These issues are typical in breach of contract cases, represent "pure issue[s] of fact ...," and are "the sort of question[s] which [are] particularly appropriate for resolution by a trial jury." *Paladino,* 588 F.Supp. at 39. *See also Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,* 713 F.2d 247, 252 (7th Cir.1983) (plaintiffs' claims under § 502(a)(1)(B) of ERISA seeking benefits under the terms of a written employee benefit plan described as "creatures of contract law"). It is especially appropriate to find a contract law analogue to plaintiffs' claims for

unpaid benefits under the facts of this case. KERP was implemented as an inducement to executives and key LTV employees to remain in LTV's employ despite the company's economic difficulties. (KERP, Art. 1.) KERP is unfunded, and is administered by the "Compensation Committee of the Board of Directors" of LTV. (KERP §§ 2.04, 2.07.) These factors strengthen the applicability of contract law principles to § 502(a)(1)(B) claims. *See Firestone*, 489 U.S. at 111, 109 S.Ct. at 954; *Terry*, 494 U.S. at 568, 110 S.Ct. at 1347 (focusing on the "underlying relationship[s] between the parties" in discerning an eighteenth century analogue to an LMRA § 301 claim alleging breach of a duty of fair representation). The fact that a jury will be required to apply the "arbitrary and capricious" standard cannot annul plaintiffs' fundamental Seventh Amendment right. *See Abbarno*, 682 F.Supp. at 181 n. 2 ("Although application of such standards argues for denying the jury trial demand, this Court finds nevertheless that . . . a jury trial is appropriate."); *Blake*, 906 F.2d at 1526 (standard of review does not control the application of the Seventh Amendment).

Many of the cases relied upon by defendants have compared plaintiffs' action for unpaid benefits to actions in equity. *E.g., Wardle*, 627 F.2d 820; *Nobile*, 611 F.Supp. at 728–29. In the courts of England prior to 1791, a common law action for the writs of debt and general assumpsit were available only to a beneficiary who was entitled to an "immediate and unconditional" payment of benefits from the trustee, in which case the trustee was considered the beneficiary's "debtor". Restatement (Second) of Trusts § 198(1) (1959).

> Unfortunately, contemporary courts have had difficulty determining when these common law writs were available. As a result, the phrase "immediate and unconditional" has taken on two separate meanings. Some courts have held that a beneficiary's right is immediate and unconditional merely if "the trustee is obligated under the terms of the trust to make distribution to the beneficiaries." Under this view, any case in which the beneficiary is allegedly eligible for past benefits could be tried to a jury. Many plan-enforcement actions sat-isfy this low threshold because the beneficiary seeks benefits to which he claims he is currently entitled under the terms of the plan. Other courts have strictly construed the term "unconditional" and have prohibited the beneficiary from bringing an action at law if eligibility is an issue. Under this view, a beneficiary has a right to a jury only if the trustee admits his obligation.

Note, *supra*, at 751 (footnotes omitted). *See also Mertens v. Hewitt Associates*, — U.S. —, — n. 6, 113 S.Ct. 2063, 2068 n. 6, 124 L.Ed.2d 161 (1993); *Pardini v. Southern Nevada Culinary and Bartenders Pension Plan and Trust*, 733 F.Supp. 1402, 1405 (D.Nev.1990). Having already determined that plaintiffs in the present case are requesting legal relief and are litigating legal issues, it is not necessary to determine the proper meaning of the phrase "immediately and unconditionally". *See Bower v. Bunker Hill Co.*, 114 F.R.D. 587 (E.D.Wash.1986). However, this Court notes that most of the authorities that have denied the right to a jury trial under the narrower reading of the phrase have been of the view that their review of the plan administrators' actions would not require them to resolve factual issues. *See, e.g., Pardini*, 733 F.Supp. at 1405 ("[M]ost cases brought under subsection (a)(1)(B) do not involve disputed factual matters."); Note, *supra*, at 745 ("A plan-enforcement action ordinarily does not raise disputed factual issues that would warrant a jury trial."). On the contrary, trial of the present case will not involve solely issues of law; a factfinder will be required to resolve disputed issues of fact, albeit under an "arbitrary and capricious" standard of review.

This result is even consistent with principles of traditional equity jurisprudence. "If factual disputes were present in equity, the chancellors in England and America frequently sent the factual issues to common law courts for resolution by a jury." Colleen P. Murphy, *Integrating the Constitutional Authority of Civil and Criminal Juries*, GEO.WASH.L.REV. 723, 753 n. 146 (1993) (citing Harold Chesnin & Geoffrey C. Hazard, Jr., *Chancery Procedure and the Seventh Amendment: Jury Trial of Issues in*

*Equity Cases Before 1791*, 83 YALE L.J. 999, 999 (1974) (noting that prior to 1800, the English Chancery court often relied upon the courts of common law for resolution of factual disputes)). This practice reflects the principle that questions of fact are best resolved by juries.

Even before resolving the retroactivity of section 102 of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), which affords plaintiffs a right to jury trial in Title VII actions, the Second Circuit held that a judge sitting in equity in a Title VII case was not permitted to render a verdict that was inconsistent with the verdict of a jury sitting at law on a claim under § 296 of the New York State Executive Law because "[w]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both." *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992) (quoting *Lincoln v. Board of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 934 (11th Cir.) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962)), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983)). This rule also recognizes the importance of the jury's role in resolving factual disputes. This Court does not believe that the merger of law and equity should operate in a way that would keep factual issues from being resolved by juries, who are best equipped to resolve them. *Cf.* Note, *supra*, at 744–45 ("courts addressing demands for jury trials should first scrutinize the litigants' claims to determine if they present any questions of fact.").

For these reasons, this Court finds that plaintiffs are asserting legal claims for relief, the resolution of which will depend upon a factfinder's determination of disputed factual questions. Therefore, under the Seventh Amendment, plaintiffs are entitled to a jury trial to resolve those questions.

### CONCLUSION

For the reasons discussed above, this Court has determined that plaintiffs have the right to a jury trial on their claims under § 502(a)(1)(B) of ERISA, which right is implicit in ERISA's statutory scheme and legislative history. Furthermore, this Court has determined that because plaintiffs' claims seek legal remedies, and present legal issues that will necessitate the resolution of factual questions, plaintiffs are entitled to a jury trial under the Seventh Amendment. Therefore, defendants' motion to strike plaintiffs' jury demand will be denied, pursuant to Fed. R.Civ.P. 12(f).

### *ORDER*

IT HEREBY IS ORDERED that defendants' motion to strike plaintiffs' jury demand is DENIED, pursuant to Fed.R.Civ.P. 12(f).

FURTHER, that counsel for the parties shall appear before this Court on Monday, April 25, 1994, at 9:00 a.m. in Part IV, Mahoney State Office Building, 65 Court Street, Buffalo, New York for a status conference, at which time a trial date will be set.

FURTHER, that counsel shall be prepared at that status conference to discuss the proper method(s) of presenting the disputed factual issues to a jury.

FURTHER, that prior to that status conference counsel shall engage in serious efforts to resolve this matter without the need for a trial.

SO ORDERED.